1  TINA WOLFSON, SBN 174806
   twolfson@ahdootwolfson.com
2  ROBERT AHDOOT, SBN 172098
   rahdoot@ahdootwolfson.com
3  THEODORE W. MAYA, SBN 223242
4  tmaya@ahdootwolfson.com
   BRADLEY K. KING, SBN 274399
5  tmaya@ahdootwolfson.com
   **AHDOOT & WOLFSON, PC**
6  1016 Palm Avenue
7  West Hollywood, California 90069
   Tel: 310-474-9111; Fax: 310-474-8585
8
   Counsel for Plaintiff,
9  Tatiana Von Slomski

10                **UNITED STATES DISTRICT COURT**

11              **CENTRAL DISTRICT OF CALIFORNIA**

12
13  Tatiana Von Slomski, individually and on behalf of    Case No. SAV13-1757-AG (ANx)
    all others similarly situated,
14                                                         **CLASS ACTION COMPLAINT**

15                        Plaintiff,                       JURY TRIAL DEMANDED

16                        v.                               1.  **Violation of California Unfair**
                                                               **Competition Law, California Business &**
17  THE HAIN CELESTIAL GROUP, INC., a                          **Professions Code § 17200,** *et seq.*
18  Delaware corporation,
                                                           2.  **Violation of California False Advertising**
19                        Defendant                            **Law, California Business & Professions**
                                                               **Code § 17500, et seq.;**
20
21                                                         3.  **Breach of Express Warranty**

22                                                         4.  **Violation of Consumers Legal Remedies**
                                                               **Act, California Civil Code § 1750,** *et seq.*
23
24
25
26
27
28

─────────────────────────────────────────────
                    CLASS ACTION COMPLAINT

Plaintiff Tatiana Von Slomski ("Plaintiff"), by and through her counsel, brings this Class Action Complaint against The Hain Celestial Group, Inc., on behalf of herself and all others similarly situated, and alleges, upon personal knowledge as to her own actions and her counsel's investigations, and upon information and belief as to all other matters, as follows:

## NATURE OF THE CASE

1.      This is a consumer protection and false advertising class action.  Defendant The Hain Celestial Group, Inc. "Defendant") markets, advertises, and distributes various teas under the Celestial Seasonings brand name, which it prominently advertises as "100% Natural."  (*See, e.g.,* packaging depicted in Paragraphs 19-20.) The teas at issue are Sleepytime Herbal Tea, Sleepytime Kids Goodnight Grape, Green Tea Peach Blossom, Green Tea Raspberry Gardens, Authentic Green Tea, Antioxidant Max Dragon Fruit, Green Tea Honey Lemon Ginseng, Antioxidant Max Blackberry Pomegranate, Antioxidant Max Blood Orange, and English Breakfast Black KCup (collectively, the "Products").  These Products are not natural, but to the contrary contain pesticides, herbicides, insecticides, carcinogens, and/or developmental toxins (collectively, "Contaminants").  Many of the Products contain Contaminants in levels violating federal standards included in 40 CFR § 180, and some contain Contaminants included in the current Proposition 65 list,[1] for which no safe harbor limits have been established.  In short, the Products contain potentially dangerous Contaminants and are most definitely not "100% Natural," as claimed.

2.      Although the Products are not "100% Natural," Defendant prominently labels every box of the Products sold in the United States as "100% Natural."  Defendant does this because consumers perceive all natural foods as better, healthier, and more wholesome.  In fact, the market for all natural foods has grown rapidly in recent years, a trend that Defendant exploits through its false advertising.

3.      Plaintiff brings claims against Defendant individually and on behalf of a class of all other similarly situated purchasers of the Products for violations of California's Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*, California's Unfair Competition Law, Cal. Bus. & Prof.

---

[1] *Available at* < http://oehha.ca.gov/prop65/prop65_list/Newlist.html> (last visited Oct. 3, 2013).

Code § 17200, *et seq*. ("UCL"), and for breach of express warranties.  Plaintiff seeks an order requiring Defendant to, among other things: (1) cease the unlawful marketing; (2) conduct a corrective advertising campaign; and (3) pay damages and restitution to Plaintiff and Class members in the amounts paid to purchase the products at issue.

## JURISDICTION AND VENUE

4.      The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2), because the proposed class has more than 100 members, the class contains at least one member of diverse citizenship from Defendant, and the amount in controversy exceeds $5 million.

5.      The Court has personal jurisdiction over Defendant because Defendant is authorized to, and conducts substantial business in, California, generally and this District, specifically.  Defendant has marketed, promoted, distributed, and sold the Products in California.

6.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events and omissions giving rise to this action occurred in this District as Defendant distributes the Products for sale within this District.

## PARTIES

7.      Plaintiff is a resident of Aliso Viejo, Orange County, California.  Plaintiff has purchased several Products in California within the past four years in reliance on Defendant's representations that the Products were  "100% Natural."  Specifically, within the past four years, Plaintiff purchased Products including Sleepytime Herbal Tea at retailers such as Vons and Ralphs.  Prominently on each of the Products' labels appeared the words "100% Natural Teas."  This representation was material to Plaintiff's decision to make these purchases.  Plaintiff was willing to pay for the Products because of the representations that they were "100% Natural" and would not have purchased the Products, would not have paid as much for the Products, or would have purchased alternative products in absence of the representations, or with the knowledge that the Products contained Contaminants.  As a result of purchasing a product in reliance on advertising that was false, Plaintiff has suffered injury in fact and lost money as a result of the unfair business practiced alleged here.

8.      Defendant Hain Celestial Group, Inc., is a publicly traded (NASDAQ: HAIN)

CLASS ACTION COMPLAINT

1  Delaware corporation with its principal place of business at 1111 Marcus Avenue, Lake Success, New

2  York 11042.   Defendant notes that it "participates in almost all natural food categories with well-

3  known brands that include Celestial Seasonings® [and others]" http://ir.hain-

4  celestial.com/phoenix.zhtml?c=87078&p=irol-irhome (last accessed Oct. 23, 2013). Upon information

5  and belief, Defendant's Celestial Seasonings division is based at 4600 Sleepytime Drive, Boulder,

6  Colorado 80301.  Defendant maintains a registered office in California at the Corporation Service

7  Company, 2710 Gateway Oaks Drive, Suite 150N, Sacramento, California 95833.  Defendant

8  distributes the Products to consumers throughout California and throughout the United States.

9  **SUBSTANTIVE ALLEGATIONS**

10  9.     The Products at issue are 10 types of tea.  Throughout the Class Period, Defendant has

11  prominently labeled and otherwise advertised the Products as "100% Natural."

12  10.     As widely reported following publication of testing of the Products by Eurofins, a

13  highly regarded, accredited, and independent testing lab (the "Eurofins Tests"), each of the Products

14  has been found to contain significant levels of one or more of the following Contaminants, described

15  on information and belief as follows:

16     a.     **Buprofezin.**  Buprofezin is a synthesized chemical insecticide developed by the

17        Dow Chemical Company ("Dow") and marketed by Dow as "Applaud."  Due to safety

18        concerns, the US government has set tolerances for residues of Buprofezin with regard to

19        certain agricultural commodities, generally in the range of a fraction of a part per million, in 40

20        C.F.R. § 180.511. Buprofezin was found to have a variety of deleterious effects on rodents

21        exposed to it in a variety of controlled studies, including increased incidences of lesions and

22        tumors on rodents' livers, adverse liver and thyroid gland effects at relatively low doses, and

23        adverse developmental and reproductive effects including decreased pup weight. *See, e.g.*,

24        <http://pmep.cce.cornell.edu/profiles/insect-mite/abamectin-

25        bufencarb/buprofezin/applaud70_reg_0503.html> (last visited Oct. 7, 2013).  Buprofezin is a

26        man-made chemical, and is not naturally occurring or "natural" in any sense of the word.

27     b.     **Carbendazim.**  As described by the U.S. Environmental Protection Agency

28        ("EPA"), Carbendazim is "a fungicide approved for use in paints, adhesives, textiles, and

3

CLASS ACTION COMPLAINT

1  ornamental trees. It is not approved for use on foods in the U.S."

2  <http://www.epa.gov/pesticides/factsheets/chemicals/carbendazim-fs.htm> (last visited Oct. 4,

3  2013). Thus, Carbendazim in food products is unlawful under the Federal Food, Drug, &

4  Cosmetic Act, including under 21 U.S.C. § 346a. *See also* 40 C.F.R. § 180.3 *et seq.* (omitting

5  Carbendazim from pesticides approved for food in quantities deemed safe by the EPA).

6  Carbendazim is identified as a hazardous waste under federal regulations, including 40 CFR

7  § 261.33. Carbendazim is a man-made chemical, and is not naturally occurring or "natural" in

8  any sense of the word.

9         c.    **Chlorpyrifos-ethyl.** Chlorpyrifos-ethyl, also known as Chlorpyrifos or as

10  Dursban, is a potent neurotoxin used as a pesticide. Dow developed and introduced this

11  unnatural chemical in or about 1965. Tolerances for residues of Chlorpyrifos-ethyl are set with

12  regard to certain agricultural commodities in 40 C.F.R. § 180.342, which also mandates strict

13  controls for application of this unnatural chemical. Chlorpyrifos-ethyl has been the subject of

14  much litigation, including an action by the New York Attorney General regarding Dow's

15  marketing of Chlorpyrifos-ethyl as safe, which resulted in a $2 million payment by Dow to the

16  state of New York. Chlorpyrifos-ethyl is a man-made chemical, and is not naturally occurring

17  or "natural" in any sense of the word.

18         d.    **Chlorfenapyr.** Chlorfenapyr is a synthesized chemical insecticide and, due to

19  safety concerns, the US government has set tolerances for residues of it on or in certain

20  agricultural commodities, generally in the range of one part per million, in 40 C.F.R.

21  § 180.513. Chlorfenapyr is a man-made chemical, and is not naturally occurring or "natural" in

22  any sense of the word.

23         e.    **Cyhalothrin lambda.** Cyhalothrin lambda, or Lambda-cyhalothrin, is a

24  synthesized chemical insecticide and, due to safety concerns, the US government has set

25  tolerances for residues of it on or in certain agricultural commodities, generally in the range of

26  one part per million, in 40 C.F.R. § 180.438. Cyhalothrin lambda is a man-made chemical, and

27  is not naturally occurring or "natural" in any sense of the word.

28

CLASS ACTION COMPLAINT

f.     **Cypermethrin.**  Cypermethrin is a synthesized chemical insecticide and, due to safety concerns, the US government has set tolerances for residues of it on or in certain agricultural commodities, generally in the range of one part per million, in 40 C.F.R. § 180.418.  Cypermethrin is a man-made chemical, and is not naturally occurring or "natural" in any sense of the word.

g.     **p,p'-DDT.**  P,p'-DDT, or p,p'-Dichlorodiphenyltrichloroethane (DDT) (CASRN 50-29-3), is an isomer and the major component of commercial DDT, an unnatural chemical insecticide that had well-known and highly negative environmental impacts, including damage to many bird species (including the Bald Eagle) when such animals accumulated the chemical in their bodies through diet.  DDT has been banned in US agriculture since 1972, and is classified as a "probable human carcinogen" by the EPA. <http://www.epa.gov/iris/subst/0147.htm> (last visited Oct. 4, 2013).  It also is classified as a chemical "known to the State [of California] to cause cancer or reproductive toxicity," and is included on California's Proposition 65 list. <http://oehha.ca.gov/prop65/prop65_list/files/P6509272013.pdf> (last visited Oct. 7, 2013). The EPA has not set tolerances for DDT in food products and thus its presence is unlawful under the Federal Food, Drug, & Cosmetic Act, including under 21 U.S.C. § 346a.  *See also* 40 C.F.R. § 180.3 *et seq.* (omitting DDT from pesticides approved for food in quantities deemed safe by the EPA).  P,p'-DDT is a man-made chemical, and is not naturally occurring or "natural" in any sense of the word.

h.     **Diazinon.**  Diazinon is a synthesized chemical insecticide, and tolerances for residues of it are set with regard to certain agricultural commodities in 40 C.F.R. § 180.153. Diazinon is a man-made chemical, and is not naturally occurring or "natural" in any sense of the word.

i.     **Dimethachlor.**  Dimethachlor is a synthesized chemical pesticide.  The EPA has not set tolerances for Dimethachlor in food products and thus its presence is unlawful under the Federal Food, Drug, & Cosmetic Act, including under 21 U.S.C. § 346a.  *See also* 40 C.F.R. § 180.3 *et seq.* (omitting Dimethachlor from pesticides approved for food in quantities

deemed safe by the EPA);

<http://ec.europa.eu/food/plant/protection/evaluation/existactive/dimethachlor.pdf> (containing European Union's report on Dimethachlor).  Diazinon is a man-made chemical, and is not naturally occurring or "natural" in any sense of the word.

        j.     **Dimethoate.**  Dimethoate is a synthesized chemical insecticide, and tolerances for residues of it are set with regard to certain agricultural commodities in 40 C.F.R. § 180.204. Dimethoate is a man-made chemical, and is not naturally occurring or "natural" in any sense of the word.

        k.     **Endosulfan.**  Endosulfan is a synthesized chemical insecticide, and is a chemical cousin of DDT that mimics the female hormone estrogen in the human body. Tolerances for residues of Endosulfan are set with regard to certain agricultural commodities in 40 C.F.R. § 180.182.  Endosulfan is a man-made chemical, and is not naturally occurring or "natural" in any sense of the word.

        l.     **Fludioxonil.**  Fludioxonil is a synthesized chemical insecticide and, due to safety concerns, the US government has set tolerances for residues of it on or in certain agricultural commodities in 40 C.F.R. § 180.516. Fludioxonil is a man-made chemical, and is not naturally occurring or "natural" in any sense of the word.

        m.     **Fipronil.**  Fipronil is a synthesized chemical insecticide and, due to safety concerns, the US government has set tolerances for residues of it on or in certain agricultural commodities in 40 C.F.R. § 180.517.  Fipronil is a man-made chemical, and is not naturally occurring or "natural" in any sense of the word.

        n.     **Hexaflumuron.**  Hexaflumuron is a synthesized chemical pesticide owned, manufactured, and marketed by Dow, primarily for termite control. <http://msdssearch.dow.com/PublishedLiteratureDOWCOM/dh_0886/0901b80380886a87.pdf?filepath=productsafety/pdfs/noreg/233-00932.pdf&fromPage=GetDoc> (last visited Oct. 7, 2013).  The EPA has not set tolerances for Hexaflumuron in food products and thus its presence is unlawful under the Federal Food, Drug, & Cosmetic Act, including under 21 U.S.C. § 346a.  *See also* 40 C.F.R. § 180.3 *et seq.* (omitting Hexaflumuron from pesticides

CLASS ACTION COMPLAINT

approved for food in quantities deemed safe by the EPA).  Hexaflumuron is a man-made chemical, and is not naturally occurring or "natural" in any sense of the word.

o.    **Imidacloprid.**  Imidacloprid is a synthesized chemical insecticide and, due to safety concerns, the US government has set tolerances for residues of it on or in certain agricultural commodities in 40 C.F.R. § 180.472.  Imidacloprid is a man-made chemical, and is not naturally occurring or "natural" in any sense of the word.

p.    **Malathion.**  Malathion is a synthesized chemical insecticide and, due to safety concerns, the US government has set tolerances for residues of it on or in certain agricultural commodities in 40 C.F.R. § 180.111.  Malathion is a man-made chemical, and is not naturally occurring or "natural" in any sense of the word.

q.    **Profenofos.**  Profenofos is a synthesized chemical insecticide and, due to safety concerns, the US government has set tolerances for residues of it on or in certain agricultural commodities in 40 C.F.R. § 180.404.  Profenofos is a man-made chemical, and is not naturally occurring or "natural" in any sense of the word.

r.    **Permethrin.**  Permethrin is a synthesized chemical insecticide and, due to safety concerns, the US government has set tolerances for residues of it on or in certain agricultural commodities in 40 C.F.R. § 180.378.  Permethrin is a man-made chemical, and is not naturally occurring or "natural" in any sense of the word.

s.    **Pyridaben.**  Pyridaben is a synthesized chemical insecticide and, due to safety concerns, the US government has set tolerances for residues of it on or in certain agricultural commodities in 40 C.F.R. § 180.494.  Pyridaben is a man-made chemical, and is not naturally occurring or "natural" in any sense of the word.

t.    **Propachlor.**  Propachlor is a synthesized chemical herbicide and, due to safety concerns, the US government has set tolerances for residues of it on or in certain agricultural commodities in 40 C.F.R. § 180.211.  Propachlor is classified as a chemical "known to the State [of California] to cause cancer or reproductive toxicity," and is included on California's Proposition 65 list.  <http://oehha.ca.gov/prop65/prop65_list/files/P6509272013.pdf> (last visited Oct. 7, 2013). Propachlor is a man-made chemical, and is not naturally occurring or

7

"natural" in any sense of the word.

u.   **Thiamethoxam.**  Thiamethoxam is a synthesized chemical insecticide and, due to safety concerns, the US government has set tolerances for residues of it on or in certain agricultural commodities in 40 C.F.R. § 180.565.  Thiamethoxam is a man-made chemical, and is not naturally occurring or "natural" in any sense of the word.

v.   **Thiacloprid.**  Thiacloprid is a synthesized chemical insecticide and, due to safety concerns, the US government has set tolerances for residues of it on or in certain commodities, generally in the hundredth-of-a-part-per-million, in 40 C.F.R. § 180.594. Thiacloprid is a man-made chemical, and is not naturally occurring or "natural" in any sense of the word.

w.   **Triazophos.**  Triazophos is a synthesized chemical pesticide, which has been found to cause cognitive dysfunction in controlled rat studies. <http://www.ncbi.nlm.nih.gov/pubmed/23949197> (last visited Oct. 7, 2013).  The EPA has not set tolerances for Triazophos in food products and thus its presence is unlawful under the Federal Food, Drug, & Cosmetic Act, including under 21 U.S.C. § 346a.  See also 40 C.F.R. § 180.3 *et seq.* (omitting Triazophos from pesticides approved for food in quantities deemed safe by the EPA).  Triazophos is classified as a marine pollutant by federal regulations, including 40 CFR § 172.101, App. B.  Triazophos is a man-made chemical, and is not naturally occurring or "natural" in any sense of the word.

///

///

///

///

CLASS ACTION COMPLAINT

11.     The published Eurofins Tests revealed that the foregoing Contaminants were found in Defendant's Products as follows:

| Celestial Seasonings Tea Sample | Buprofezin | Carbendazim | Chlorpyrifos-ethyl | Chlorfenapyr | Cyhalothrin lambda | Cypermethrin | p,p'-DDT | Diazinon | Dimethachlor | Dimethoate | Endosulfan (Sum) | Fludioxonil | Fipronil | Hexaflumuron | Imidacloprid | Malathion | Profenofos | Permethrin | Pyridaben | Propachlor | Thiamethoxam | Thiacloprid | Triazophos | Detected U.S. Adulterants |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Eng Bkfst Black K-Cup | | | | | | * | * | | * | | | | | | * | | | | | | * | | | 5 |
| Authentic Green Tea | * | | * | * | | * | | | | | * | | | * | * | | * | | | | | | | 8 |
| Green Tea Honey Lem Gin | * | | * | * | | * | | | | | | | | * | * | | | * | | | | | | 7 |
| Green Tea Peach Blossom | * | | * | * | | * | | | | | * | * | * | | | | | * | | | | * | | 9 |
| Green Tea Rasp Gardens | * | | * | * | | * | | | | | | | | * | | | | * | | | * | * | * | 9 |
| Rooibos Safari Spice | | | | | | | | | | | | | | | | | | | | | | | | 0 |
| Sleepytime Herb Teas | | * | | | | | | * | | * | | | | | | * | * | | | | | | | 5 |
| Sleepytime Kids Gdnt Grape | | * | * | | | | | * | | * | | | | | | * | * | | * | | | | | 7 |
| Antioxidant Max Blckbry Pom | * | | * | * | | * | | | | | | * | | * | | | | * | | | | | | 7 |
| Antioxidant Max Blood Orange | * | | * | * | | * | | | | | | | | * | | | | * | | | | * | | 7 |
| Antioxidant Max Dragon Fruit | * | | * | * | | * | | | | | | | | * | | | | * | | | | * | * | 8 |
| | | | | | | | | | | | | | | | | | | | | | | | **Total** | **72** |
| | | | | | | | | | | | | | | | | | | | | | | | **Average Violations per Sample** | **6.5** |

\* violation of U.S. 40 CFR 180; pesticide residue detected for which there is no established EPA tolerance level or for which such tolerance level was exceeded.

13.     In response to publication of the Eurofins Tests, Defendant posted a "Safety Assurance" statement on its website assuring consumers that its teas are "safe" despite the adverse test results, and boasting that Defendant sent the same types of teas to a different laboratory, identified as the National Food Lab, for testing that "detected no ***pesticides*** in the ***brewed*** Celestial Seasonings teas they tested." <http://www.celestialseasonings.com/safety-assurance> (emphasis added) (last visited Oct. 7, 2013).

14.     Defendant has not disclosed the actual test results on which it relied to issue its Safety Assurance and, on information and belief, has claimed that the results constitute "proprietary information." <http://www.examiner.com/article/dangerously-high-pesticide-levels-found-celestial-seasonings-teas> (last visited Oct. 9, 2013).

15.     Furthermore, the National Food Lab (NFL) proudly lists Celestial Seasonings as one of its clients on its website, stating, 'somewhere along the line, we have had a hand in their success.'" *Id.*;

9

*see also* <http://web.archive.org/web/20130501174523/http://www.thenfl.com/about-us/our-clients> (showing archived version of NFL website listing Celestial Seasonings among clients and including quoted language) (last visited Oct. 9, 2013).

16.     Defendant's misleading "Safety Assurance," which does not directly deny the presence of pesticides, amounts to an admission by defendant that its teas contain unnatural, toxic pesticides, and thus are not "100% Natural," as advertised.

17.     In its Safety Assurance, Defendant also asserted that the Eurofins Tests were reported by a "short seller" that stood to profit if Defendant's stock price declined as a result of publication of the Eurofins Tests.  Defendant did not and could not, however, claim that Eurofins was biased or that the Eurofins Tests were not, in fact, accurate.

18.     Despite the presence of these Contaminants in its Products, and despite Defendant's clear knowledge of the Contaminants, Defendant continues to prominently label the Products as "100% Natural" just as it has at all relevant times before and after publication of the Eurofins Tests.

19.     Defendant incorporates its "100% Natural" claim into the very logo for its brand, which appears on the outer packaging of the Products and elsewhere, as in the following example, taken from Defendant's website, at <http://www.celestialseasonings.com> on October 8, 2013:



///
///
///
///

CLASS ACTION COMPLAINT

20.    Defendant prominently displays this logo, including the "100% Natural" claim, on the outer packaging for the Products, as in the following examples:





CLASS ACTION COMPLAINT

21.     Defendant bolsters and repeats such "natural" claims through additional advertising, including its website.  For instance, on its website, Defendant claims that:

a.      "In 1969, a group of passionate young entrepreneurs founded Celestial Seasonings upon the belief that their flavorful, ***all-natural*** herbal teas could help people live healthier lives."  <http://www.celestialseasonings.com/about> (last visited Oct. 9, 2013) (emphasis added).

b.      "For more than 40 years, we've traveled to the ends of the earth to find the highest quality, most authentic ingredients for our teas – visiting over 35 different countries to source more than 100 of ***the finest natural botanicals***." <http://www.celestialseasonings.com/our-tea> (last visited Oct. 9, 2013) (emphasis added).

c.      "For more than 40 years, we've made ***all-natural*** teas that are good for our people and good for our planet."  <http://www.celestialseasonings.com/our-values-our-tea> (last visited Oct. 9, 2013) (emphasis added).

d.      "Our ingredients come from all over the world these days, but our ***all-natural*** teas have always been created in our hometown of Boulder, Colorado." <http://www.celestialseasonings.com/our-values-our-tea> (last visited Oct. 9, 2013) (emphasis added).

e.      "We started blending ***all-natural*** teas from herbs picked in the fields and forests of the Rocky Mountains back in 1969." <http://www.celestialseasonings.com/products/sleepytime-teas> (last visited Oct. 9, 2013) (emphasis added).

f.      "With a combination of simple ingredients, complex flavors and ***natural goodness***, these teas are the perfect addition to a healthy diet and active lifestyle." <http://www.celestialseasonings.com/products/green-teas> (last visited Oct. 9, 2013) (emphasis added).

g.      "In addition to ***natural herbs***, teas, spices and botanicals, some of our teas use natural flavors to achieve their unique tastes.  The natural flavors we use are derived from real

12

CLASS ACTION COMPLAINT

ingredients and ***do not contain artificial or synthetic additives***."

<http://www.celestialseasonings.com/faqs> (last visited Oct. 9, 2013) ("What are

natural flavors?") (emphasis added).

22.    The Products are sold for approximately $3.99 per box containing 20 tea bags.

23.    In comparison, some of Defendant's competitors sell competing teas for as little as

$2.50.

24.    By consistently labeling the Products as "100% Natural," Defendant ensures that all

consumers purchasing the Products are exposed to its "100% Natural" claim.

25.    However, the Contaminants are undeniably ***not*** natural in any way.

26.    Not only are the Contaminants specifically designed to kill pests and/or plants, raising

significant health and safety concerns (thus requiring the cited federal regulations designed to ensure

that the Contaminants do not appear in food products at all or in excess of levels deemed acceptable by

the EPA), but they are manufactured and patented by chemical companies such as Dow, with no claim

that they are "natural" in any way.

27.    For instance, Dow states that "Hexaflumuron is produced using a complex and

proprietary process involving a series of reaction and purification steps."

<http://msdssearch.dow.com/PublishedLiteratureDOWCOM/dh_0886/0901b80380886a87.pdf?filepat

h=productsafety/pdfs/noreg/233-00932.pdf&fromPage=GetDoc> (last visited Oct. 8, 2013).

28.    On information and belief, each of the Contaminants is produced using similarly

complex processes that are or have been proprietary.  None of the Contaminants are "natural."

## CLASS ACTION ALLEGATIONS

29.    Plaintiff seeks relief in her individual capacity and seeks to represent a class consisting

of all others who are similarly situated.  Pursuant to Fed. R. Civ. P. 23(a) and (b)(2) and/or (b)(3),

Plaintiff seeks certification of a class initially defined as follows:

>    All consumers who, from November 6, 2009 until the date notice is disseminated to the
>    Class (the "Class Period"), purchased any of the following Celestial Seasonings Teas in
>    the United States:  (1) Sleepytime Herbal Tea, (2) Sleepytime Kids Goodnight Grape,
>    (3) Green Tea Peach Blossom, (4) Green Tea Raspberry Gardens, (5) Authentic Green

CLASS ACTION COMPLAINT

Tea, (6) Antioxidant Max Dragon Fruit, (7) Green Tea Honey Lemon Ginseng, (8) Antioxidant Max Blackberry Pomegranate, (9) Antioxidant Max Blood Orange, and/or (10) English Breakfast Black KCup.

30.    Excluded from the Class are Defendant and its subsidiaries and affiliates, Defendant's executives, board members, legal counsel, the judges and all other court personnel to whom this case is assigned, their immediate families, and those who purchased the Products for the purpose of resale.

31.    <u>Numerosity</u>. Fed. R. Civ. P. 23(a)(1).  The Class is so numerous that joinder of all members is unfeasible and not practicable.  While the precise number of Class members has not been determined at this time, Plaintiff is informed and believes that many thousands or millions of consumers have purchased the Products.

32.    <u>Commonality</u>.  Fed. R. Civ. P. 23(a)(2) and (b)(3).  There are questions of law and fact common to the Class, which predominate over any questions affecting only individual Class members. These common questions of law and fact include, without limitation:

a.    Whether Defendant uniformly conveyed to the class that the Products were "100% Natural;"

b.    Whether Defendant's claim that the Products are "100% Natural" is true or false or likely to deceive a reasonable consumer;

c.    Whether Defendant violated California Civil Code §§ 1750, *et seq.*;

d.    Whether Defendant violated California Business and Professions Code §§ 17200, *et seq.*;

e.    Whether Defendant breached an express warranty;

f.    Whether Defendant violated California's Sherman Food, Drug, and Cosmetic Act, Cal. Health & Safety Code §§ 109875 *et seq.*;

g.    Whether Defendant violated federal law including 21 U.S.C. § 346a and 40 C.F.R. §§ 180 *et seq.*; and

h.    The nature of the relief, including equitable relief, to which Plaintiff and the Class members are entitled.

33.    <u>Typicality</u>.  Fed. R. Civ. P. 23(a)(3).  Plaintiff's claims are typical of the claims of the

1  Class.  Plaintiff and all Class members were exposed to uniform practices and sustained injury arising

2  out of and caused by Defendant's unlawful conduct.

3       34.     Adequacy of Representation.  Fed. R. Civ. P. 23(a)(4).  Plaintiff will fairly and

4  adequately represent and protect the interests of the members of the Class.  Plaintiff's Counsel are

5  competent and experienced in litigating class actions.

6       35.     Superiority of Class Action.  Fed. R. Civ. P. 23(b)(3).  A class action is superior to

7  other available methods for the fair and efficient adjudication of this controversy since joinder of all

8  the members of the Class is impracticable.  Furthermore, the adjudication of this controversy through a

9  class action will avoid the possibility of inconsistent and potentially conflicting adjudication of the

10  asserted claims.  There will be no difficulty in the management of this action as a class action.

11       36.     Injunctive and Declaratory Relief.  Fed. R. Civ. P. 23(b)(2).  Defendant's

12  misrepresentations are uniform as to all members of the Class.  Defendant has acted or refused to act

13  on grounds that apply generally to the Class, so that final injunctive relief or declaratory relief is

14  appropriate with respect to the Class as a whole.

15                          **FIRST CAUSE OF ACTION**

16       **(California Unfair Competition Law – Cal. Bus. & Prof. Code § 17200, *et seq.*)**

17       37.     Plaintiff incorporates by reference and re-alleges the preceding paragraphs.

18       38.     Defendant engaged in unlawful, unfair, and/or fraudulent conduct under California's

19  Unfair Competition Law ("UCL"), California Business & Professional Code § 17200, *et seq.*, by

20  representing that the Products are "100% Natural," when they are not.

21       39.     Defendant's conduct is unlawful in that it violates the Consumers Legal Remedies Act,

22  California Civil Code §§ 1750, *et seq.*; California's False Advertising Law, California Business &

23  Professions Code §§ 17500 *et seq.*; California's Sherman Food, Drug, and Cosmetic Act ("Sherman

24  Law"), Cal. Health & Safety Code §§ 109875 *et seq.*; and federal law including 21 U.S.C. § 346a and

25  40 C.F.R. §§ 180 *et seq.*

26       40.     Defendant's conduct is unfair in that it offends established public policy and/or is

27  immoral, unethical, oppressive, unscrupulous, and/or substantially injurious to Plaintiff and Class

28  members.  The harm to Plaintiff and Class members arising from Defendant's conduct outweighs any

legitimate benefit Defendant derived from the conduct.  Defendant's conduct undermines and violates the stated spirit and policies underlying the Consumers Legal Remedies Act, the False Advertising Law, and federal laws and regulations as alleged herein.

41.     Defendant's actions and practices constitute "fraudulent" business practices in violation of the UCL because, among other things, they are likely to deceive reasonable consumers.  Plaintiff relied on Defendant's representations and omissions.

42.     As a direct and proximate result of Defendant's violations, Plaintiff suffered injury in fact and lost money because she purchased the Products at the price she paid believing them to be 100% natural when they were not.

43.     Plaintiff, on behalf of herself and Class members, seeks equitable relief in the form of an order requiring Defendant to refund Plaintiff and all Class members all monies they paid for the Products, and injunctive relief in the form of an order prohibiting Defendant from engaging in the alleged misconduct and performing a corrective advertising campaign.

**SECOND CAUSE OF ACTION**

**(California False Advertising Law – Cal. Bus. & Prof. Code § 17500, *et seq*.)**

44.     Plaintiff incorporates by reference and re-alleges the preceding paragraphs.

45.     Defendant publicly disseminated untrue or misleading advertising or intended not to sell the Products as advertised in violation of California's False Advertising Law ("FAL"), Business & Professional Code § 17500, *et seq*., by representing that the Products are "100% Natural," when they are not.

46.     Defendant committed such violations of the False Advertising Law with actual knowledge or in the exercise of reasonable care should have known was untrue or misleading.

47.     Plaintiff reasonably relied on Defendant's representations and/or omissions made in violation of California Business & Professional Code § 17500, *et seq*.

48.     As a direct and proximate result of Defendant's violations, Plaintiff suffered injury in fact and lost money.

49.     Plaintiff, on behalf of herself and Class members, seeks equitable relief in the form of an order requiring Defendant to refund Plaintiff and all Class members all monies they paid for the

CLASS ACTION COMPLAINT

Products, and injunctive relief in the form of an order prohibiting Defendant from engaging in the alleged misconduct and performing a corrective advertising campaign.

### THIRD CAUSE OF ACTION

### (Breach of Express Warranty)

50.     Plaintiff incorporates by reference and re-alleges the preceding paragraphs.

51.     Plaintiff brings this claim individually and on behalf of the Class.

52.     Plaintiff and each member of the Class formed a contract with Defendants at the time Plaintiff and the other members of the Class purchased one or more of the Products.  The terms of that contract include the promises and affirmations of fact made by Defendant on the packaging of the Products, as described above.  The Products' packaging constitutes express warranties, became part of the basis of the bargain, and are part of a standardized contract between Plaintiff and the members of the Class on the one hand, and Defendant on the other.

53.     All conditions precedent to Defendants' liability under this contract have been performed by Plaintiff and the Class.

54.     Defendant breached the terms of this contract, including the express warranties, with Plaintiff and the Class by not providing the products that could provide the benefits promised, i.e. that the Products were "100% Natural."

55.     As a result of Defendant's breach of its contract, Plaintiff and the Class have been damaged in the amount of the purchase price of any and all of the Products they purchased.

### FOURTH CAUSE OF ACTION

### (Violation of Consumers Legal Remedies Act – Civil Code § 1750, et seq.)

56.     Plaintiff incorporates by reference and re-alleges the preceding paragraphs.

57.     Plaintiff brings this claim individually and on behalf of the Class.

58.     This cause of action is brought pursuant to the Consumers Legal Remedies Act, California Civil Code § 1750, *et seq.* (the "CLRA") because Defendant's actions and conduct described herein constitute transactions that have resulted in the sale or lease of goods or services to consumers.

59.     Plaintiff and each member of the Class are consumers as defined by California Civil

---

17

Code §1761(d). Defendant intended to sell the Products.

60.   The Products are goods within the meaning of Civil Code §1761(a).

61.   Defendant violated the CLRA in at least the following respects:

    a.   in violation of §1770(a)(2), Defendant misrepresented the source of the Products as "100% Natural," when they contained Contaminants that are not natural;

    b.   in violation of  §1770(a)(5), Defendant represented that the Products have characteristics, ingredients, and benefits (100% Natural) which they do not have (because they contain Contaminants that are not natural);

    c.   in violation of §1770(a)(7), Defendant represented that the Products are of a particular standard, quality or grade ("100% Natural") when they are of another (containing Contaminants that are not natural);

    d.   in violation of §1770(a)(9), Defendant has advertised the Products (as "100% Natural") with intent not to sell them as advertised (containing Contaminants that are not natural); and

    e.   in violation of §1770(a)(16), Defendant represented that the Products have been supplied in accordance with previous representations (as "100% Natural") , when they were not (because they contained Contaminants that are not natural).

62.   Defendant violated the Act by representing the Products as "100% Natural," when the Products contained Contaminants that were not natural.  Defendant knew, or should have known, that the representations and advertisements were false and misleading.

63.   Defendant's acts and omissions constitute unfair, deceptive, and misleading business practices in violation of Civil Code §1770(a).

64.   On November 6, 2013, Plaintiff notified Defendant in writing, by certified mail, of the violations alleged herein and demanded that Defendant remedy those violations.

65.   If Defendant fails to remedy the violations alleged herein within 30 days of receipt of Plaintiff's notice, Plaintiff will amend this Complaint to add claims for actual, punitive, and statutory damages pursuant to the CLRA.

66.   Defendant's conduct is malicious, fraudulent, and wanton in that Defendant

intentionally and knowingly provided misleading information to the public.

## JURY DEMAND

Plaintiff demands a trial by jury of all claims in this Complaint so triable.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the other members of the Class proposed in this Complaint, respectfully requests that the Court enter judgment in his favor and against Defendant, as follows:

A.      Declaring that this action is a proper class action, certifying the Class as requested herein, designating Plaintiff as Class Representative and appointing the undersigned counsel as Class Counsel;

B.      Ordering Defendant to pay actual damages (and no less than the statutory minimum damages), restitution and equitable monetary relief to Plaintiff and the other members of the Class;

C.      Ordering Defendant to pay punitive damages, as allowable by law, to Plaintiff and the other members of the Class;

D.      Ordering Defendant to pay statutory damages, as allowable by the statutes asserted herein, to Plaintiff and the other members of the Class;

E.      Awarding injunctive relief as permitted by law or equity, including enjoining Defendant from continuing the unlawful practices as set forth herein, and ordering Defendant to engage in a corrective advertising campaign;

F.      Ordering Defendant to pay attorneys' fees and litigation costs to Plaintiff and the other members of the Class;

G.      Ordering Defendant to pay both pre- and post-judgment interest on any amounts awarded; and

///

///

///

CLASS ACTION COMPLAINT

1       H.       Ordering such other and further relief as may be just and proper.

2

3   Dated:  November 6, 2013           Respectfully submitted,

                                      **AHDOOT & WOLFSON, PC**

4

5

6                                      Tina Wolfson

7                                      Robert Ahdoot

                                     Theodore W. Maya

8                                      Bradley K. King

                                     1016 Palm Avenue

9                                      West Hollywood, California 90069

                                     Tel: 310-474-9111

10                                    Facsimile: 310-474-8585

11                                    Counsel for Plaintiff,

12                                    Tatiana Von Slomski

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

CLASS ACTION COMPLAINT

**AFFIDAVIT OF TINA WOLFSON**

I, Tina Wolfson, declare as follows:

1.      I am an attorney with the law firm of Ahdoot & Wolfson, P.C., counsel for Plaintiff Tatiana Von Slomski ("Plaintiff") in this action.  I am admitted to practice law in California and before this Court, and am a member in good standing of the State Bar of California.  This declaration is made pursuant to California Civil Code section 1780(d).  I make this declaration based on my research of public records and upon personal knowledge and, if called upon to do so, could and would testify competently thereto.

2.      Based on my research and personal knowledge, Defendant The Hain Celestial Group, Inc. ("Defendant") does business within the County of Los Angeles and Plaintiff purchased Defendant's products within the County of Los Angeles, as alleged in the Class Action Complaint.

I declare under penalty of perjury under the laws of the United States and the State of California this 6th day of November, 2013 in Los Angeles, California that the foregoing is true and correct.

Tina Wolfson

CLASS ACTION COMPLAINT

RETURN TO CUSTOMER

# UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
## CIVIL COVER SHEET

**I. (a) PLAINTIFFS** ( Check box if you are representing yourself ☐ )

Tatiana Von Slomski, individually and on behalf of all others similarly situated

**DEFENDANTS** ( Check box if you are representing yourself ☐ )

THE HAIN CELESTIAL GROUP, INC., a Delaware corporation

**(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same information.)
Tina Wolfson
AHDOOT & WOLFSON, PC
1016 Palm Avenue
West Hollywood, CA 90069

**(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same information.)

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1. U.S. Government Plaintiff
☐ 2. U.S. Government Defendant
☐ 3. Federal Question (U.S. Government Not a Party)
☒ 4. Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES**-For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1. Original Proceeding
☐ 2. Removed from State Court
☐ 3. Remanded from Appellate Court
☐ 4. Reinstated or Reopened
☐ 5. Transferred from Another District (Specify)
☐ 6. Multi-District Litigation

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes ☐ No (Check "Yes" only if demanded in complaint.)

**CLASS ACTION under F.R.Cv.P. 23:** ☒ Yes ☐ No ☒ **MONEY DEMANDED IN COMPLAINT:** $ over $5,000,000

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Violations of Cal. Bus. & Prof. Code Section 17200, et seq.; Cal. Bus. & Prof. Code Section 17500, et seq.; Cal. Civ. Code Section 1750, et seq.

**VII. NATURE OF SUIT** (Place an X in one box only).

| OTHER STATUTES | CONTRACT | REAL PROPERTY CONT. | IMMIGRATION | PRISONER PETITIONS | PROPERTY RIGHTS |
|---|---|---|---|---|---|
| ☐ 375 False Claims Act | ☐ 110 Insurance | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | **Habeas Corpus:** | ☐ 820 Copyrights |
| ☐ 400 State Reapportionment | ☐ 120 Marine | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | ☐ 463 Alien Detainee | ☐ 830 Patent |
| ☐ 410 Antitrust | ☐ 130 Miller Act | ☐ 290 All Other Real Property | | ☐ 510 Motions to Vacate Sentence | ☐ 840 Trademark |
| ☐ 430 Banks and Banking | ☐ 140 Negotiable Instrument | **TORTS** | | ☐ 530 General | **SOCIAL SECURITY** |
| ☐ 450 Commerce/ICC Rates/Etc. | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | **PERSONAL PROPERTY** | **PERSONAL PROPERTY** | ☐ 535 Death Penalty | ☐ 861 HIA (1395ff) |
| ☐ 460 Deportation | | ☐ 310 Airplane | ☐ 370 Other Fraud | **Other:** | ☐ 862 Black Lung (923) |
| ☐ 470 Racketeer Influenced & Corrupt Org. | ☐ 151 Medicare Act | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 540 Mandamus/Other | ☐ 863 DIWC/DIWW (405 (g)) |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Vet.) | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 550 Civil Rights | ☐ 864 SSID Title XVI |
| ☐ 490 Cable/Sat TV | | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 555 Prison Condition | ☐ 865 RSI (405 (g)) |
| ☐ 850 Securities/Commodities/Exchange | ☐ 153 Recovery of Overpayment of Vet. Benefits | ☐ 340 Marine | **BANKRUPTCY** | ☐ 560 Civil Detainee Conditions of Confinement | **FEDERAL TAX SUITS** |
| ☒ 890 Other Statutory Actions | ☐ 160 Stockholders' Suits | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | **FORFEITURE/PENALTY** | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 891 Agricultural Acts | | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 893 Environmental Matters | ☐ 190 Other Contract | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 690 Other | |
| ☐ 895 Freedom of Info. Act | ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | ☐ 440 Other Civil Rights | **LABOR** | |
| ☐ 896 Arbitration | ☐ 196 Franchise | ☐ 362 Personal Injury-Med Malpractice | ☐ 441 Voting | ☐ 710 Fair Labor Standards Act | |
| | **REAL PROPERTY** | ☐ 365 Personal Injury-Product Liability | ☐ 442 Employment | ☐ 720 Labor/Mgmt. Relations | |
| ☐ 899 Admin. Procedures Act/Review of Appeal of Agency Decision | ☐ 210 Land Condemnation | ☐ 367 Health Care/Pharmaceutical Personal Injury Product Liability | ☐ 443 Housing/Accomodations | ☐ 740 Railway Labor Act | |
| | ☐ 220 Foreclosure | | ☐ 445 American with Disabilities-Employment | ☐ 751 Family and Medical Leave Act | |
| ☐ 950 Constitutionality of State Statutes | ☐ 230 Rent Lease & Ejectment | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 446 American with Disabilities-Other | ☐ 790 Other Labor Litigation | |
| | | | ☐ 448 Education | ☐ 791 Employee Ret. Inc. Security Act | |

**FOR OFFICE USE ONLY:** Case Number: SACV13-1757

**VIII. VENUE:** Your answers to the questions below will determine the division of the Court to which this case will most likely be initially assigned. This initial assignment is subject to change, in accordance with the Court's General Orders, upon review by the Court of your Complaint or Notice of Removal.

| Question A: Was this case removed from state court? | THE STATE CASE WAS PENDING IN THE COUNTY OF: | INITIAL DIVISION IN CACD IS: |
|---|---|---|
| ☐ Yes ☒ No | ☐ Los Angeles | Western |
| If "no," go to Question B. If "yes," check the box to the right that applies, enter the corresponding division in response to Question D, below, and skip to Section IX. | ☐ Ventura, Santa Barbara, or San Luis Obispo | Western |
| | ☐ Orange | Southern |
| | ☐ Riverside or San Bernardino | Eastern |

| Question B: Is the United States, or one of its agencies or employees, a party to this action? | If the United States, or one of its agencies or employees, is a party, is it: | | INITIAL DIVISION IN CACD IS: |
|---|---|---|---|
| | **A PLAINTIFF?** Then check the box below for the county in which the majority of DEFENDANTS reside. | **A DEFENDANT?** Then check the box below for the county in which the majority of PLAINTIFFS reside. | |
| ☐ Yes ☒ No | ☐ Los Angeles | ☐ Los Angeles | Western |
| If "no," go to Question C. If "yes," check the box to the right that applies, enter the corresponding division in response to Question D, below, and skip to Section IX. | ☐ Ventura, Santa Barbara, or San Luis Obispo | ☐ Ventura, Santa Barbara, or San Luis Obispo | Western |
| | ☐ Orange | ☐ Orange | Southern |
| | ☐ Riverside or San Bernardino | ☐ Riverside or San Bernardino | Eastern |
| | ☐ Other | ☐ Other | Western |

| Question C: Location of plaintiffs, defendants, and claims? | A. Los Angeles County | B. Ventura, Santa Barbara, or San Luis Obispo Counties | C. Orange County | D. Riverside or San Bernardino Counties | E. Outside the Central District of California | F. Other |
|---|---|---|---|---|---|---|
| Indicate the location in which a majority of plaintiffs reside: | ☐ | ☐ | ☒ | ☐ | ☐ | ☐ |
| Indicate the location in which a majority of defendants reside: | ☐ | ☐ | ☐ | ☐ | ☒ | ☐ |
| Indicate the location in which a majority of claims arose: | ☐ | ☐ | ☒ | ☐ | ☐ | ☐ |

| **C.1. Is either of the following true? If so, check the one that applies:** | **C.2. Is either of the following true? If so, check the one that applies:** |
|---|---|
| ☒ 2 or more answers in Column C | ☐ 2 or more answers in Column D |
| ☐ only 1 answer in Column C and no answers in Column D | ☐ only 1 answer in Column D and no answers in Column C |
| Your case will initially be assigned to the SOUTHERN DIVISION. Enter "Southern" in response to Question D, below. | Your case will initially be assigned to the EASTERN DIVISION. Enter "Eastern" in response to Question D, below. |
| If none applies, answer question C2 to the right. ➡ | If none applies, go to the box below. ⬇ |

Your case will initially be assigned to the
WESTERN DIVISION.
Enter "Western" in response to Question D below.

| Question D: Initial Division? | INITIAL DIVISION IN CACD |
|---|---|
| Enter the initial division determined by Question A, B, or C above: ➡ | SOUTHERN DIVISION |

**IX(a). IDENTICAL CASES**: Has this action been previously filed in this court and dismissed, remanded or closed?   ☒ NO   ☐ YES

If yes, list case number(s):

**IX(b). RELATED CASES**: Have any cases been previously filed in this court that are related to the present case?   ☒ NO   ☐ YES

If yes, list case number(s):

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply)   ☐ A. Arise from the same or closely related transactions, happenings, or events; or

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or

☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

---

**X. SIGNATURE OF ATTORNEY
(OR SELF-REPRESENTED LITIGANT):**   *T. Wolfso*   DATE:   November 6, 2013

---

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |