AHDOOT & WOLFSON, P.C.
Tina Wolfson (SBN 174806)
   E-mail: twolfson@ahdootwolfson.com
Robert Ahdoot (SBN 172098)
   E-mail: rahdoot@ahdootwolfson.com
Theodore W. Maya (SBN 223242)
   E-mail: tmaya@ahdootwolfson.com
Bradley K. King (SBN 274399)
   E-mail: bking@ahdootwolfson.com
1016 Palm Avenue
West Hollywood, CA  90069
(310) 474-9111
(310) 474-8585 Facsimile

RIDOUT LYON + OTTOSON, LLP
Christopher P. Ridout (SBN 143931)
   E-mail: c.ridout@rlollp.com
Caleb Marker (SBN 269721)
   E-mail: c.marker@rlollp.com
555 Ocean Boulevard, Suite 500
Long Beach, CA 90802
(562) 216-7380
(562) 216-7385 Facsimile

*Interim Co-Lead Counsel for Plaintiffs*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| In Re: HAIN CELESTIAL SEASONINGS PRODUCTS CONSUMER LITIGATION,<br><br>This Document Relates To: All Actions. | CASE NO.: 8:13-cv-01757-AG-AN<br><br>Consolidated with: CV 13-8559 AG (ANx)<br>CV 13-9310 AG (ANx)<br>CV 13-9314 AG (ANx)<br><br>**CONSOLIDATED<br>CLASS ACTION COMPLAINT**<br><br>Hon. Andrew Guilford<br>Courtroom: 10D<br><br>(Jury Trial Demanded) |

Plaintiff Tatiana Von Slomski ("Plaintiff Von Slomski") and Plaintiff Sylvia Trevino ("Plaintiff Trevino"), (collectively, "Plaintiffs"), by and through their counsel, bring this Consolidated Class Action Complaint against The Hain Celestial Group, Inc., on behalf of themselves and all others similarly situated, and allege, upon personal

knowledge as to their own actions and their counsel's investigations, and upon information and belief as to all other matters, as follows:

## NATURE OF THE CASE

1.       This is a consumer protection and false advertising class action.  Defendant The Hain Celestial Group, Inc. ("Defendant") markets, advertises, and distributes various teas under the Celestial Seasonings brand name, which it prominently advertises as "100% Natural."   The teas at issue are Sleepytime Herbal Tea, Sleepytime Kids Goodnight Grape, Green Tea Peach Blossom, Green Tea Raspberry Gardens, Authentic Green Tea, Antioxidant Max Dragon Fruit, Green Tea Honey Lemon Ginseng, Antioxidant Max Blackberry Pomegranate, Antioxidant Max Blood Orange, and English Breakfast Black KCup (collectively, the "Products").   These Products are not natural.   To the contrary, these Products contain pesticides, herbicides, insecticides, carcinogens, and/or developmental toxins (collectively, "Contaminants").   Many of the Products contain Contaminants in levels violating federal standards included in 40 CFR § 180, and some contain Contaminants included in the current Proposition 65 list,[1] for which no safe harbor limits have been established.   In short, the Products contain potentially dangerous Contaminants and are most definitely not "100% Natural," as claimed.

2.       Although the Products are not "100% Natural," Defendant prominently labels every box of the Products sold in the United States as "100% Natural."  Defendant does this because consumers perceive all natural foods as better, healthier, and more wholesome.   In fact, the market for all natural foods has grown rapidly in recent years, a trend that Defendant exploits through its false advertising.

3.       Plaintiffs bring claims against Defendant individually and on behalf of a class of all other similarly situated purchasers of the Products for violations of California's Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*,

---

[1] *Available at* < http://oehha.ca.gov/prop65/prop65_list/Newlist.html> (last visited Oct. 3, 2013).

California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq*. ("UCL"), and for breach of express warranties. Plaintiffs seek an order requiring Defendant to, among other things: (1) cease the unlawful marketing; (2) conduct a corrective advertising campaign; and (3) pay damages and restitution to Plaintiffs and Class members in the amounts paid to purchase the products at issue.

## JURISDICTION AND VENUE

4.      The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2), because the proposed class has more than 100 members, the class contains at least one member of diverse citizenship from Defendant, and the amount in controversy exceeds $5 million.

5.      The Court has personal jurisdiction over Defendant because Defendant is authorized to, and conducts substantial business in, California, generally and this District, specifically. Defendant has marketed, promoted, distributed, and sold the Products in California.

6.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events and omissions giving rise to this action occurred in this District as Defendant distributes the Products for sale within this District.

## PARTIES

7.      Plaintiff Von Slomski is a resident of Aliso Viejo, Orange County, California. Plaintiff Von Slomski has purchased several Products in California within the past four years in reliance on Defendant's representations that the Products were "100% Natural." Specifically, within the past four years, Plaintiff Von Slomski purchased Products including Sleepytime Herbal Tea at retailers such as Vons and Ralphs. Prominently on each of the Products' labels appeared the words "100% Natural Teas." This representation was material to Plaintiff Von Slomski's decision to make these purchases. Plaintiff Von Slomski was willing to pay for the Products because of the representations that they were "100% Natural" and would not have purchased the Products, would not have paid for the Products, or would have purchased alternative

products in absence of the representations, or with the knowledge that the Products contained Contaminants.  As a result of purchasing a product in reliance on advertising that was false, Plaintiff Von Slomski has suffered injury in fact and lost money as a result of the Defendant's unfair business practices alleged here.

8.    Plaintiff Trevino is a resident of La Crescenta, Los Angeles County, California.  Plaintiff Trevino has purchased several Products in California within the past four years in reliance on Defendant's representations that the Products were "100% Natural."  Specifically, within the past four years, Plaintiff Trevino purchased Products including Sleepytime Herbal Tea and Green Tea at retailers in Los Angeles County, including, but not limited to, the Whole Foods Market in Glendale, California.  Prominently on each of the Products' labels appeared the words "100% Natural Teas." This representation was material to Plaintiff Trevino's decision to make these purchases.   Plaintiff Trevino was willing to pay for the Products because of the representations that they were "100% Natural" and would not have purchased the Products, would not have paid as much for the Products, or would have purchased alternative products in absence of the representations, or with the knowledge that the Products contained Contaminants.  As a result of purchasing a product in reliance on advertising that was false, Plaintiff Trevino has suffered injury in fact and lost money as a result of the Defendant's unfair business practices alleged here.

9.    Defendant Hain Celestial Group, Inc., is a publicly traded (NASDAQ: HAIN) Delaware corporation with its principal place of business at 1111 Marcus Avenue, Lake Success, New York 11042.  Defendant notes that it "participates in almost all natural food categories with well-known brands that include Celestial Seasonings® [and others]" http://ir.hain-celestial.com/phoenix.zhtml?c=87078&p=irol-irhome (last accessed Oct. 23, 2013).   Upon information and belief, Defendant's Celestial Seasonings division is based at 4600 Sleepytime Drive, Boulder, Colorado 80301.  Defendant maintains a registered office in California at the Corporation Service Company, 2710 Gateway Oaks Drive, Suite 150N, Sacramento, California 95833.

Defendant distributes the Products to consumers throughout California and throughout the United States.

## SUBSTANTIVE ALLEGATIONS

10.     The Products at issue are 10 types of tea.  Throughout the Class Period, Defendant has prominently labeled and otherwise advertised the Products as "100% Natural."

11.     As widely reported following publication of testing of the Products by Eurofins, a highly regarded, accredited, and independent testing lab (the "Eurofins Tests"), each of the Products has been found to contain significant levels of one or more of the following Contaminants, described on information and belief as follows:

a.     **Buprofezin.**   Buprofezin is a synthesized chemical insecticide developed by the Dow Chemical Company ("Dow") and marketed by Dow as "Applaud."  Due to safety concerns, the US government has set tolerances for residues of Buprofezin with regard to certain agricultural commodities, generally in the range of a fraction of a part per million, in 40 C.F.R. § 180.511. Buprofezin was found to have a variety of deleterious effects on rodents exposed to it in a variety of controlled studies, including increased incidences of lesions and tumors on rodents' livers, adverse liver and thyroid gland effects at relatively low doses, and adverse developmental and reproductive effects including decreased pup weight.   *See, e.g.,*   <http://pmep.cce.cornell.edu/profiles/insect-mite/abamectin-bufencarb/buprofezin/applaud70_reg_0503.html> (last visited March 17, 2014).  Buprofezin is a man-made chemical, and is not naturally occurring or "natural" in any sense of the word.

b.     **Carbendazim.**  As described by the U.S. Environmental Protection Agency ("EPA"), Carbendazim is "a fungicide approved for use in paints, adhesives, textiles, and ornamental trees.  It is not approved for use on foods in the   U.S."      <http://www.epa.gov/pesticides/factsheets/chemicals/carbendazim-

fs.htm> (last visited Oct. 4, 2013).   Thus, Carbendazim in food products is unlawful under the Federal Food, Drug, & Cosmetic Act, including under 21 U.S.C. § 346a.  *See also* 40 C.F.R. § 180.3 *et seq.* (omitting Carbendazim from pesticides approved for food in quantities deemed safe by the EPA). Carbendazim is identified as a hazardous waste under federal regulations, including 40 CFR § 261.33.  Carbendazim is a man-made chemical, and is not naturally occurring or "natural" in any sense of the word.

     c.   **Chlorpyrifos-ethyl.**   Chlorpyrifos-ethyl, also known as Chlorpyrifos or its trade names Dursban, Lorsban, or Renoban, is a potent neurotoxin used as a pesticide.  Dow developed and introduced this unnatural chemical in or about 1965.  *See* <http://pmep.cce.cornell.edu/profiles/extoxnet/ carbaryl-dicrotophos/chlorpyrifos-ext.html> (last visited Feb. 26, 2014). Tolerances for residues of Chlorpyrifos-ethyl are set with regard to certain agricultural commodities in 40 C.F.R. § 180.342, which also mandates strict controls for application of this unnatural chemical.  Chlorpyrifos-ethyl has been the subject of much litigation, including an action by the New York Attorney General regarding Dow's marketing of Chlorpyrifos-ethyl as safe, which resulted in a $2 million payment by Dow to the state of New York.  Chlorpyrifos-ethyl is a man-made chemical, and is not naturally occurring or "natural" in any sense of the word.

     d.   **Chlorfenapyr.**  Chlorfenapyr is a synthesized chemical insecticide and, due to safety concerns, the US government has set tolerances for residues of it on or in certain agricultural commodities, generally in the range of one part per million, in 40 C.F.R. § 180.513.  The EPA registered Chlorfenapyr for use in non-food crops in greenhouses in January 2001.  *See* <http://www. epa.gov/opp00001/chem_search/reg_actions/registration/fs_PC-129093_01-Jan-01.pdf> (last visited Feb. 26, 2014).  Chlorfenapyr is a man-made chemical, and is not naturally occurring or "natural" in any sense of the word.

e.   **Cyhalothrin lambda.**  Cyhalothrin lambda, or Lambda-cyhalothrin, is a synthesized chemical insecticide and, due to safety concerns, the U.S. government has set tolerances for residues of it on or in certain agricultural commodities, generally in the range of one part per million, in 40 C.F.R. § 180.438.   Cyhalothrin lambda is a synthetic pyrethroid that disrupts the functioning of the nervous system in an organism, and may cause paralysis or death.  *See* <http://npic.orst.edu/factsheets/l_cyhalogen.pdf> (last visited Feb. 26, 2014).   Cyhalothrin lambda is a man-made chemical, and is not naturally occurring or "natural" in any sense of the word.

f.   **Cypermethrin.**  Cypermethrin is a synthesized chemical insecticide and, due to safety concerns, the U.S. government has set tolerances for residues of it on or in certain agricultural commodities, generally in the range of one part per million, in 40 C.F.R. § 180.418.  Cypermethrin is found in many household insect killers and excessive exposure can cause nausea, headache, muscle weakness, salivation, shortness of breath and seizures.  Cypermethrin is a man-made chemical, and is not naturally occurring or "natural" in any sense of the word.

g.   **p,p'-DDT.**  P,p'-DDT, or p,p'-Dichlorodiphenyltrichloroethane (DDT) (CASRN 50-29-3), is an isomer and the major component of commercial DDT, an unnatural chemical insecticide that has well-known and highly negative environmental impacts, including damage to many bird species (including the Bald Eagle) that occurred when such animals accumulated the chemical in their bodies through diet.  DDT has been banned in US agriculture since 1972, and is classified as a "probable human carcinogen" by the EPA. <http://www.epa.gov/iris/subst/0147.htm> (last visited Oct. 4, 2013).  It also is classified as a chemical "known to the State [of California] to cause cancer or reproductive toxicity," and is included on California's Proposition 65 list. <http://oehha.ca.gov/prop65/prop65_list/files/P6509272013.pdf>   (last   visited

Oct. 7, 2013).  The EPA has not set tolerances for DDT in food products and thus its presence is unlawful under the Federal Food, Drug, & Cosmetic Act, including under 21 U.S.C. § 346a.  *See also* 40 C.F.R. § 180.3 *et seq.* (omitting DDT from pesticides approved for food in quantities deemed safe by the EPA).  P,p'-DDT is a man-made chemical, and is not naturally occurring or "natural" in any sense of the word.

h.  **Diazinon.**  Diazinon is a synthesized chemical insecticide, and tolerances for residues of it are set with regard to certain agricultural commodities in 40 C.F.R. § 180.153.  Diazinon is a man-made chemical, and is not naturally occurring or "natural" in any sense of the word.

i.  **Dimethachlor.**  Dimethachlor is a synthesized chemical pesticide.  The EPA has not set tolerances for Dimethachlor in food products and thus its presence is unlawful under the Federal Food, Drug, & Cosmetic Act, including under 21 U.S.C. § 346a.  *See also* 40 C.F.R. § 180.3 *et seq.* (omitting Dimethachlor from pesticides approved for food in quantities deemed safe by the EPA); <http://ec.europa.eu/food/plant/protection/evaluation/existactive/dimethachlor.pdf> (containing European Union's report on Dimethachlor).  Diazinon is a man-made chemical, and is not naturally occurring or "natural" in any sense of the word.

j.  **Dimethoate.**  Dimethoate is a synthesized chemical insecticide, and tolerances for residues of it are set with regard to certain agricultural commodities in 40 C.F.R. § 180.204.  Dimethoate is a man-made chemical, and is not naturally occurring or "natural" in any sense of the word.

k.  **Endosulfan.**  Endosulfan is a synthesized chemical insecticide, and is a chemical cousin of DDT that mimics the female hormone estrogen in the human body.  Tolerances for residues of Endosulfan are set with regard to certain agricultural commodities in 40 C.F.R. § 180.182.  In 2010, EPA announced its intent to terminate the use of Endosulfan domestically.  *See* <http://www.epa.gov/pesticides/reregistration/endosulfan/endosulfan-cancl-fs.html>

CONSOLIDATED CLASS ACTION COMPLAINT

- 8 -

(last visited Feb. 26, 2014).  Endosulfan is a man-made chemical, and is not naturally occurring or "natural" in any sense of the word.

l.   **Fludioxonil.**  Fludioxonil is a synthesized chemical insecticide and, due to safety concerns, the US government has set tolerances for residues of it on or in certain agricultural commodities in 40 C.F.R. § 180.516.  Fludioxonil is a man-made chemical, and is not naturally occurring or "natural" in any sense of the word.

m.   **Fipronil.**  Fipronil is a synthesized chemical insecticide and, due to safety concerns, the US government has set tolerances for residues of it on or in certain agricultural commodities in 40 C.F.R. § 180.517.  Fipronil is a man-made chemical, and is not naturally occurring or "natural" in any sense of the word.

n.   **Hexaflumuron.**  Hexaflumuron is a synthesized chemical pesticide owned, manufactured, and marketed by Dow, primarily for termite control. <http://msdssearch.dow.com/PublishedLiteratureDOWCOM/dh_0886/0901b803 80886a87.pdf?filepath=productsafety/pdfs/noreg/233-00932.pdf&fromPage= GetDoc> (last visited March 17, 2014).  The EPA has not set tolerances for Hexaflumuron in food products and thus its presence is unlawful under the Federal Food, Drug, & Cosmetic Act, including under 21 U.S.C. § 346a.  *See also* 40 C.F.R. § 180.3 *et seq.* (omitting Hexaflumuron from pesticides approved for food in quantities deemed safe by the EPA).  Hexaflumuron is a man-made chemical, and is not naturally occurring or "natural" in any sense of the word.

o.   **Imidacloprid.**  Imidacloprid is a synthesized chemical insecticide and, due to safety concerns, the US government has set tolerances for residues of it on or in certain agricultural commodities in 40 C.F.R. § 180.472.  Imidacloprid is a man-made chemical, and is not naturally occurring or "natural" in any sense of the word.

p.   **Malathion.**  Malathion is a synthesized chemical insecticide and, due to safety concerns, the US government has set tolerances for residues of it on

or in certain agricultural commodities in 40 C.F.R. § 180.111.  Malathion is a man-made chemical, and is not naturally occurring or "natural" in any sense of the word.

        q.    **Profenofos.**  Profenofos is a synthesized chemical insecticide and, due to safety concerns, the US government has set tolerances for residues of it on or in certain agricultural commodities in 40 C.F.R. § 180.404.  Profenofos is a man-made chemical, and is not naturally occurring or "natural" in any sense of the word.

        r.    **Permethrin.**  Permethrin is a synthesized chemical insecticide and, due to safety concerns, the US government has set tolerances for residues of it on or in certain agricultural commodities in 40 C.F.R. § 180.378.  Permethrin is a man-made chemical, and is not naturally occurring or "natural" in any sense of the word.

        s.    **Pyridaben.**  Pyridaben is a synthesized chemical insecticide and, due to safety concerns, the US government has set tolerances for residues of it on or in certain agricultural commodities in 40 C.F.R. § 180.494.  Pyridaben is a man-made chemical, and is not naturally occurring or "natural" in any sense of the word.

        t.    **Propachlor.**  Propachlor is a synthesized chemical herbicide and, due to safety concerns, the US government has set tolerances for residues of it on or in certain agricultural commodities in 40 C.F.R. § 180.211.  Propachlor is classified as a chemical "known to the State [of California] to cause cancer or reproductive toxicity," and is included on California's Proposition 65 list. <http://oehha.ca.gov/prop65/prop65_list/files/P6509272013.pdf> (last visited Oct. 7, 2013).  Propachlor is a man-made chemical, and is not naturally occurring or "natural" in any sense of the word.

        u.    **Propargite.**  Propargite is a pesticide that causes severe irritation to human skin and eyes and is a considered a probable human carcinogen by EPA.

*See* <http://www.epa.gov/oppsrrd1/reregistration/REDs/factsheets/propargite_fs. htm> (last visited Feb. 26, 2014). Propargite is classified as a chemical "known to the State [of California[ to cause cancer or reproductive toxicity," and is included on California's Proposition 65 list. <http://oehha.ca.gov/prop65/prop65_list/ Newlist.html>. *See also* 40 C.F.R. § 180.259 (government mandated tolerances for Propargite residues). Propargite is a man-made chemical, and is not naturally occurring or "natural" in any sense of the word.

   v.   **Thiamethoxam.**   Thiamethoxam is a synthesized chemical insecticide and, due to safety concerns, the US government has set tolerances for residues of it on or in certain agricultural commodities in 40 C.F.R. § 180.565. Thiamethoxam is a man-made chemical, and is not naturally occurring or "natural" in any sense of the word.

   w.   **Thiacloprid.**   Thiacloprid is a synthesized chemical insecticide and, due to safety concerns, the US government has set tolerances for residues of it on or in certain commodities, generally in the hundredth-of-a-part-per-million, in 40 C.F.R. § 180.594.   Thiacloprid is a man-made chemical, and is not naturally occurring or "natural" in any sense of the word.

   x.   **Triazophos.**   Triazophos is a synthesized chemical pesticide, which has been found to cause cognitive dysfunction in controlled rat studies. <http://www.ncbi.nlm.nih.gov/pubmed/23949197> (last visited Oct. 7, 2013). The EPA has not set tolerances for Triazophos in food products and thus its presence is unlawful under the Federal Food, Drug, & Cosmetic Act, including under 21 U.S.C. § 346a.  See also 40 C.F.R. § 180.3 *et seq.* (omitting Triazophos from pesticides approved for food in quantities deemed safe by the EPA). Triazophos is classified as a marine pollutant by federal regulations, including 40 CFR § 172.101, App. B.   Triazophos is a man-made chemical, and is not naturally occurring or "natural" in any sense of the word.

12.     The published Eurofins Tests revealed that Contaminants were found in Defendant's Products as follows:

| Celestial Seasonings Tea Sample | Buprofezin | Carbendazim | Chlorpyrifos-ethyl | Chlorfenapyr | Cyhalothrin lambda | Cypermethrin | p,p'-DDT | Diazinon | Dimethachlor | Dimethoate | Endosulfan (Sum) | Fludioxonil | Fipronil | Hexaflumuron | Imidacloprid | Malathion | Profenofos | Permethrin | Pyridaben | Propachlor | Thiamethoxam | Thiacloprid | Triazophos | Detected U.S. Adulterants |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Eng Bkfst Black K-Cup |  |  |  |  |  | * | * |  |  | * |  |  |  |  | * |  |  |  |  |  | * |  |  | 5 |
| Authentic Green Tea | * |  | * | * |  | * |  |  |  |  | * |  |  | * | * |  |  | * |  |  |  |  |  | 8 |
| Green Tea Honey Lem Gin | * |  | * | * |  | * |  |  |  |  |  |  |  | * | * |  |  | * |  |  |  |  |  | 7 |
| Green Tea Peach Blossom | * |  | * | * |  | * |  |  |  |  |  |  | * | * | * |  |  | * |  |  |  | * |  | 9 |
| Green Tea Rasp Gardens | * |  | * | * |  | * |  |  |  |  |  |  |  | * | * |  |  | * |  |  | * | * |  | 9 |
| Rooibos Safari Spice |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | 0 |
| Sleepytime Herb Teas |  | * |  |  |  |  |  | * |  | * |  |  |  |  |  | * | * |  |  |  |  |  |  | 5 |
| Sleepytime Kids Gdnt Grape |  | * | * |  |  |  |  | * |  | * |  |  |  |  |  | * | * | * |  |  |  |  |  | 7 |
| Antioxidant Max Blckbry Pom | * |  | * | * |  | * |  |  |  |  | * |  |  |  | * |  |  | * |  |  |  |  |  | 7 |
| Antioxidant Max Blood Orange | * |  | * | * |  | * |  |  |  |  |  |  |  |  | * |  |  | * |  |  |  | * |  | 7 |
| Antioxidant Max Dragon Fruit | * |  | * | * |  | * |  |  |  |  |  |  |  |  | * |  |  | * |  |  | * | * |  | 8 |

* violation of U.S. 40 CFR 180; pesticide residue detected for which there is no established EPA tolerance level or for which such tolerance level was exceeded.

**Total** 72
**Average Violations per Sample** 6.5

14.     In response to publication of the Eurofins Tests, Defendant posted a "Safety Assurance" statement on its website assuring consumers that its teas are "safe" despite the adverse test results, and boasting that Defendant sent the same types of teas to a different laboratory, identified as the National Food Lab ("NFL"), for testing that "detected no **pesticides** in the **brewed** Celestial Seasonings teas they tested." <http://www.celestialseasonings.com/safety-assurance> (emphasis added) (last visited Oct. 7, 2013).  It is unclear why NFL tested **brewed** products when that is not the state in which consumers purchase Defendant's Products.

15.     Defendant has not disclosed the actual test results on which it relied to issue its Safety Assurance and, on information and belief, has claimed that the results constitute "proprietary information."   <http://www.examiner.com/article/dangerously-high-pesticide-levels-found-celestial-seasonings-teas> (last visited Oct. 9, 2013).

16.     Furthermore, NFL proudly lists Celestial Seasonings as one of its clients on its website, stating, 'somewhere along the line, we have had a hand in their success.'" *Id.*; *see also* <http://web.archive.org/web/20130501174523/http://www.thenfl.com/about-us/our-clients) (showing archived version of NFL website listing Celestial Seasonings among clients and including quoted language) (last visited March 14, 2014).

17.     Defendant's misleading "Safety Assurance," which does not directly deny the presence of pesticides, amounts to an admission by defendant that its teas contain unnatural, toxic pesticides, and thus are not "100% Natural," as advertised.

18.     In its Safety Assurance, Defendant also asserted that the Eurofins Tests were reported by a "short seller" that stood to profit if Defendant's stock price declined as a result of publication of the Eurofins Tests.  Defendant did not and could not, however, claim that Eurofins was biased or that the Eurofins Tests were not, in fact, accurate.

19.     Despite the presence of these Contaminants in its Products, and despite Defendant's clear knowledge of the Contaminants, Defendant continues to prominently label the Products as "100% Natural" just as it has at all relevant times before and after publication of the Eurofins Tests.

20.     Defendant incorporates its "100% Natural" claim into the very logo for its brand, which appears on the outer packaging of the Products and elsewhere, as in the following example, taken from Defendant's website, at <http://www.celestialseasonings.com> on October 8, 2013:



21.     Defendant prominently displays this logo, including the "100% Natural" claim, on the outer packaging for the Products, as in the following examples:





22.     Defendant bolsters and repeats such "natural" claims through additional advertising, including its website.  For instance, on its website, Defendant claims that:

a.      "In 1969, a group of passionate young entrepreneurs founded Celestial Seasonings upon the belief that their flavorful, ***all-natural*** herbal teas could help people live healthier lives."  <http://www.celestialseasonings.com/about> (last visited Oct. 9, 2013) (emphasis added).

b.      "For more than 40 years, we've traveled to the ends of the earth to find the highest quality, most authentic ingredients for our teas – visiting over 35 different countries to source more than 100 of ***the finest natural botanicals***."  <http://www.celestialseasonings.com/our-tea>  (last visited Oct. 9, 2013) (emphasis added).

c.      "For more than 40 years, we've made ***all-natural*** teas that are good for our people and good for our planet."  <http://www.celestialseasonings.com/our-values-our-tea> (last visited Oct. 9, 2013) (emphasis added).

d.      "Our ingredients come from all over the world these days, but our ***all-natural*** teas have always been created in our hometown of Boulder, Colorado."     <http://www.celestialseasonings.com/our-values-our-tea>   (last visited Oct. 9, 2013) (emphasis added).

e.      "We started blending ***all-natural*** teas from herbs picked in the fields and forests of the Rocky Mountains back in 1969." <http://www.celestialseasonings.com/products/sleepytime-teas> (last visited Oct. 9, 2013) (emphasis added).

f.      "With a combination of simple ingredients, complex flavors and ***natural goodness***, these teas are the perfect addition to a healthy diet and active lifestyle." <http://www.celestialseasonings.com/products/green-teas> (last visited Oct. 9, 2013) (emphasis added).

g.      "In addition to ***natural herbs***, teas, spices and botanicals, some of our teas use natural flavors to achieve their unique tastes.  The natural flavors we

use are derived from real ingredients and ***do not contain artificial or synthetic additives***." <http://www.celestialseasonings.com/faqs> (last visited Oct. 9, 2013) ("What are natural flavors?") (emphasis added).

       h.    "We are confident that all Celestial Seasonings Teas deliver on . . . ***high quality, safety***. . . . Celestial Seasonings employs a rigorous testing protocol to ensure all products adhere to strict industry standards. Celestial follows regulations set by . . . FDA . . . and EPA . . . ." *See* <http://www.celestialseasonings.com/our-values-our-tea> (last visited Feb. 26, 2014).

23.    The Products are sold for approximately $3.99 per box containing 20 tea bags.

24.    In comparison, some of Defendant's competitors sell competing teas for as little as $2.50.

25.    By consistently labeling the Products as "100% Natural," Defendant ensures that all consumers purchasing the Products are exposed to its "100% Natural" claim.

26.    However, the Contaminants are undeniably ***not*** natural in any way.

27.    Not only are the Contaminants specifically designed to kill pests and/or plants, raising significant health and safety concerns (thus requiring the cited federal regulations designed to ensure that the Contaminants do not appear in food products at all or in excess of levels deemed acceptable by the EPA), but they are manufactured and patented by chemical companies such as Dow, with no claim that they are "natural" in any way.

28.    For instance, Dow states that "Hexaflumuron is produced using a complex and proprietary process involving a series of reaction and purification steps." <http://msdssearch.dow.com/PublishedLiteratureDOWCOM/dh_0886/0901b80380886a87.pdf?filepath=productsafety/pdfs/noreg/233-00932.pdf&fromPage=GetDoc> (last visited Oct. 8, 2013).

29.    On information and belief, each of the Contaminants is produced using

similarly complex processes that are or have been proprietary.   None of the Contaminants are "natural."

## CLASS ACTION ALLEGATIONS

30.     Plaintiffs seek relief in their individual capacity and seek to represent a class consisting of all others who are similarly situated.   Pursuant to Fed. R. Civ. P. 23(a) and (b)(2) and/or (b)(3), Plaintiffs seek certification of a class initially defined as follows:

> All consumers who, from November 6, 2009 until the date notice is disseminated to the Class (the "Class Period"), purchased any of the following Celestial Seasonings Teas in the United States:  (1) Sleepytime Herbal Tea, (2) Sleepytime Kids Goodnight Grape, (3) Green Tea Peach Blossom, (4) Green Tea Raspberry Gardens, (5) Authentic Green Tea, (6) Antioxidant Max Dragon Fruit, (7) Green Tea Honey Lemon Ginseng, (8) Antioxidant Max Blackberry Pomegranate, (9) Antioxidant Max Blood Orange, and/or (10) English Breakfast Black KCup.

31.     Excluded from the Class are Defendant and its subsidiaries and affiliates, Defendant's executives, board members, legal counsel, the judges and all other court personnel to whom this case is assigned, their immediate families, and those who purchased the Products for the purpose of resale.

32.     Numerosity.   Fed. R. Civ. P. 23(a)(1).   The Class is so numerous that joinder of all members is unfeasible and not practicable.   While the precise number of Class members has not been determined at this time, Plaintiffs are informed and believe that many thousands or millions of consumers have purchased the Products.

33.     Commonality.   Fed. R. Civ. P. 23(a)(2) and (b)(3).   There are questions of law and fact common to the Class, which predominate over any questions affecting only individual Class members.   These common questions of law and fact include, without limitation:

> a.     Whether Defendant engaged in the conduct alleged herein;

b.      Whether Defendant's practices were deceptive, unfair, improper and/or misleading;

c.      Whether Defendant uniformly conveyed to the class that the Products were "100% Natural;"

d.      Whether Defendant's claim that the Products are "100% Natural" is true or false or likely to deceive a reasonable consumer;

e.      Whether Defendant violated California Civil Code §§ 1750, *et seq.*;

f.      Whether Defendant violated California Business and Professions Code §§ 17200, *et seq.*;

g.      Whether Defendant violated California Business and Professions Code §§ 17500, *et seq.*;

h.      Whether Defendant breached an express warranty;

i.      Whether Defendant's conduct as alleged herein constitutes and resulted in unjust enrichment;

j.      Whether Defendant violated California's Sherman Food, Drug, and Cosmetic Act, Cal. Health & Safety Code §§ 109875 *et seq.*;

k.      Whether Defendant violated federal law including 21 U.S.C. § 346a and 40 C.F.R. §§ 180 *et seq.*; and

l.      The nature of the relief, including equitable relief, to which Plaintiff and the Class members are entitled.

34.     Typicality.  Fed. R. Civ. P. 23(a)(3).  Plaintiffs' claims are typical of the claims of the Class.  Plaintiffs and all Class members were exposed to uniform practices and sustained injury arising out of and caused by Defendant's unlawful conduct.

35.     Adequacy of Representation.  Fed. R. Civ. P. 23(a)(4).  Plaintiffs will fairly and adequately represent and protect the interests of the members of the Class. Plaintiffs' Counsel are competent and experienced in litigating class actions.

36.     Superiority of Class Action.  Fed. R. Civ. P. 23(b)(3).  A class action is superior to other available methods for the fair and efficient adjudication of this

controversy since joinder of all the members of the Class is impracticable. Furthermore, the adjudication of this controversy through a class action will avoid the possibility of inconsistent and potentially conflicting adjudication of the asserted claims. There will be no difficulty in the management of this action as a class action.

37. <u>Injunctive and Declaratory Relief</u>. Fed. R. Civ. P. 23(b)(2). Defendant's misrepresentations are uniform as to all members of the Class. Defendant has acted or refused to act on grounds that apply generally to the Class, so that final injunctive relief or declaratory relief is appropriate with respect to the Class as a whole.

**FIRST CAUSE OF ACTION**

**(California Unfair Competition Law – Cal. Bus. & Prof. Code § 17200, *et seq*.)**

38. Plaintiffs, on behalf of themselves and the Class, incorporate by reference and re-allege the preceding paragraphs.

39. Plaintiffs bring this claim individually and on behalf of the Class.

40. Defendant engaged in unlawful, unfair, and/or fraudulent conduct under California's Unfair Competition Law ("UCL"), California Business & Professions Code § 17200, *et seq*., by representing that the Products are "100% Natural," when they are not.

41. Defendant's conduct is unlawful in that it violates the Consumers Legal Remedies Act, California Civil Code §§ 1750, *et seq*.; California's False Advertising Law, California Business & Professions Code §§ 17500 *et seq*.; California's Sherman Food, Drug, and Cosmetic Act ("Sherman Law"), Cal. Health & Safety Code §§ 109875 *et seq*.; and federal law including 21 U.S.C. § 346a and 40 C.F.R. §§ 180 *et seq*.

42. Defendant's conduct is unfair in that it offends established public policy and/or is immoral, unethical, oppressive, unscrupulous, and/or substantially injurious to Plaintiffs and Class members. The harm to Plaintiffs and Class members arising from Defendant's conduct outweighs any legitimate benefit Defendant derived from the conduct. Defendant's conduct undermines and violates the stated spirit and policies

underlying the Consumers Legal Remedies Act, the False Advertising Law, and federal laws and regulations as alleged herein.

43.     Defendant's actions and practices constitute "fraudulent" business practices in violation of the UCL because, among other things, they are likely to deceive reasonable consumers.   Plaintiffs relied on Defendant's representations and omissions.

44.     As a direct and proximate result of Defendant's violations, Plaintiffs suffered injury in fact and lost money because they purchased the Products at the price they paid believing them to be 100% natural when they were not.

45.     Plaintiffs, on behalf of themselves and the Class, seek:  (a) injunctive relief in the form of an order requiring Defendant to cease the acts of unfair competition alleged herein and to correct its advertising, promotion, and marketing campaigns; (b) full restitution of all monies paid by Plaintiffs and all Class members because of Defendant's deceptive practices including, but not limited to, disgorgement of all profits derived from the sale of the Products; (c) interest at the highest rate allowable by law; and (d) the payment of Plaintiffs' attorneys' fees and costs pursuant to, *inter alia*, California Code of Civil Procedure Section 1021.5.

## SECOND CAUSE OF ACTION

**(California False Advertising Law – Cal. Bus. & Prof. Code § 17500, *et seq*.)**

46.     Plaintiffs, on behalf of themselves and the Class, incorporate by reference and re-allege the preceding paragraphs.

47.     Plaintiffs bring this claim individually and on behalf of the Class.

48.     Defendant publicly disseminated untrue or misleading advertising or intended not to sell the Products as advertised in violation of California's False Advertising Law ("FAL"), Business & Professional Code § 17500, *et seq*., by representing that the Products are "100% Natural," when they are not.

49.     Defendant committed such violations of the False Advertising Law with actual knowledge or in the exercise of reasonable care should have known was untrue

---

CONSOLIDATED CLASS ACTION COMPLAINT

or misleading.

50.   Plaintiffs reasonably relied on Defendant's representations and/or omissions made in violation of California Business & Professional Code § 17500, *et seq*.

51.   As a direct and proximate result of Defendant's violations, Plaintiffs suffered injury in fact and lost money.

52.   Plaintiffs, on behalf of themselves and the Class, seek:  (a) injunctive relief in the form of an order requiring Defendant to cease the acts of unfair competition alleged herein and to correct its advertising, promotion and marketing campaigns; (b) full restitution of all monies paid by Plaintiffs and all Class members because of Defendant's deceptive practices including, but not limited to, disgorgement of all profits derived from the sale of the Products; (c) interest at the highest rate allowable by law; and (d) the payment of Plaintiffs' attorneys' fees and costs pursuant to California Code of Civil Procedure Section 1021.5, *inter alia*.

### THIRD CAUSE OF ACTION

### (Breach of Express Warranty)

53.   Plaintiffs, on behalf of themselves and the Class, incorporate by reference and re-allege the preceding paragraphs.

54.   Plaintiffs bring this claim individually and on behalf of the Class.

55.   Plaintiffs and each member of the Class formed a contract with Defendants at the time Plaintiffs and the other members of the Class purchased one or more of the Products.  The terms of that contract include the promises and affirmations of fact made by Defendant on the packaging of the Products, as described above.  The Products' packaging constitutes express warranties, became part of the basis of the bargain, and are part of a standardized contract between Plaintiff and the members of the Class on the one hand, and Defendant on the other.

56.   All conditions precedent to Defendants' liability under this contract have been performed by Plaintiffs and the Class.

57.     Defendant breached the terms of this contract, including the express warranties, with Plaintiffs and the Class by not providing the products that could provide the benefits promised, *i.e.*, that the Products were "100% Natural."

58.     As a result of Defendant's breach of its contract, Plaintiffs and the Class have been damaged in the amount of the purchase price of any and all of the Products they purchased.

### FOURTH CAUSE OF ACTION

**(Violation of Consumers Legal Remedies Act – Civil Code § 1750, *et seq.*)**

59.     Plaintiffs incorporate by reference and re-allege the preceding paragraphs.

60.     Plaintiffs bring this claim individually and on behalf of the Class.

61.     This cause of action is brought pursuant to the Consumers Legal Remedies Act, California Civil Code § 1750, *et seq.* (the "CLRA") because Defendant's actions and conduct described herein constitute transactions that have resulted in the sale or lease of goods or services to consumers.

62.     Plaintiffs and each member of the Class are consumers as defined by California Civil Code §1761(d).  Defendant intended to sell the Products.

63.     The Products are goods within the meaning of Civil Code §1761(a).

64.     Defendant violated the CLRA in at least the following respects:

   a.  in violation of §1770(a)(2), Defendant misrepresented the source of the Products as "100% Natural," when they contained Contaminants that are not natural;

   b.  in violation of  §1770(a)(5), Defendant represented that the Products have characteristics, ingredients, and benefits (100% Natural) which they do not have (because they contain Contaminants that are not natural);

   c.  in violation of §1770(a)(7), Defendant represented that the Products are of a particular standard, quality or grade ("100% Natural") when they are of another (containing Contaminants that are not natural);

d.  in violation of §1770(a)(9), Defendant has advertised the Products (as "100% Natural") with intent not to sell them as advertised (containing Contaminants that are not natural); and

e.  in violation of §1770(a)(16), Defendant represented that the Products have been supplied in accordance with previous representations (as "100% Natural") , when they were not (because they contained Contaminants that are not natural).

65.   Defendant violated the Act by representing the Products as "100% Natural," when the Products contained Contaminants that were not natural.  Defendant knew, or should have known, that the representations and advertisements were false and misleading.

66.   Defendant's acts and omissions constitute unfair, deceptive, and misleading business practices in violation of Civil Code §1770(a).

67.   Plaintiffs have complied with Civil Code § 1782(a) by notifying Defendant in writing, by certified mail, of the violations alleged herein and demanded that Defendant remedy those violations.

68.   Defendant's conduct is malicious, fraudulent, and wanton in that Defendant intentionally and knowingly provided misleading information to the public.

## JURY DEMAND

Plaintiffs demand a trial by jury of all claims in this Complaint so triable.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the other members of the Class proposed in this Complaint, respectfully requests that the Court enter judgment in her favor and against Defendant, as follows:

A.   Declaring that this action is a proper class action, certifying the Class as requested herein, designating Plaintiffs as Class Representatives and appointing the undersigned counsel as Class Counsel;

B.   For an accounting by Defendant for any and all profits derived by

Defendant from their herein-alleged unlawful, unfair and/or fraudulent conduct and/or business practices;

C.      Ordering Defendant to pay actual damages (and no less than the statutory minimum damages), restitution, and disgorgement of all money or property wrongfully obtained by Defendant by means of their herein-alleged unlawful, unfair, and fraudulent business practices, and equitable monetary relief to Plaintiffs and the other members of the Class;

D.      Recovery of the amounts by which Defendant has been unjustly enriched;

E.      Ordering Defendant to pay punitive damages, as allowable by law, to Plaintiff and the other members of the Class;

F.      Ordering Defendant to pay statutory damages, as allowable by the statutes asserted herein, to Plaintiffs and the other members of the Class;

G.      Awarding injunctive relief as permitted by law or equity, including enjoining Defendant from continuing the unlawful practices as set forth herein, and ordering Defendant to engage in a corrective advertising campaign;

H.      Ordering Defendant to pay attorneys' fees and litigation costs to Plaintiff and the other members of the Class pursuant to California Code of Civil Procedure Section 1021.5 and the common law private attorney general doctrine;

I.      Ordering Defendant to pay both pre- and post-judgment interest on any amounts awarded; and

///

///

///

///

1    J.    Ordering such other and further relief as may be just and proper.

2                                 Respectfully submitted,

3

4

5    Dated:  March 14, 2014            Respectfully submitted,

6                                 **AHDOOT & WOLFSON, PC**

7

8                                 _____

9                                 Tina Wolfson

10                                Robert Ahdoot

                                  Theodore W. Maya

11                                Bradley K. King

                                  1016 Palm Avenue

12                                West Hollywood, California 90069

                                  Tel: 310-474-9111

13                                Facsimile: 310-474-8585

14

15                                RIDOUT LYON + OTTOSON, LLP

16                                Christopher P. Ridout

17                                Caleb Marker

                                  555 E. Ocean Boulevard, Suite 500

18                                Long Beach, CA  90802

                                  (562) 216-7380

19                                (562) 216-7385 Facsimile

20

21                                *Interim Co-Lead Counsel for Plaintiffs*

22

23

24

25

26

27

28

CONSOLIDATED CLASS ACTION COMPLAINT

- 25 -

### AFFIDAVIT OF TINA WOLFSON

I, Tina Wolfson, declare as follows:

1.      I am an attorney with the law firm of Ahdoot & Wolfson, P.C., which has been appointed as interim co-lead counsel in this action.  I am admitted to practice law in California and before this Court, and am a member in good standing of the State Bar of California.   This declaration is made pursuant to California Civil Code section 1780(d).  I make this declaration based on my research of public records and upon personal knowledge and, if called upon to do so, could and would testify competently thereto.

2.      Based on my research and personal knowledge, Defendant The Hain Celestial Group, Inc. ("Defendant") does business within the State of California, and Plaintiffs purchased Defendant's products within the State of California, as alleged in the Consolidated Class Action Complaint.

I declare under penalty of perjury under the laws of the United States and the State of California this 14th day of March, 2014 in West Hollywood, California that the foregoing is true and correct.

_____
Tina Wolfson